## HUGHES v. THE COUNTY OF MUSCATINE.

1. **Bridges:** PERSONAL INJURIES: DAMAGES. Where a bridge consisted of several spans, one of which fell while plaintiff was crossing it, it was *held*, in an action for damages against the county, that the attention of the jury should not be limited to the particular part which fell, but that the condition of the entire bridge should be considered.

2. ——: ——: CONTRIBUTORY NEGLIGENCE. It was not required that plaintiff should have been entirely free from negligence to entitle her to recover; she was bound to exercise only such care as persons of ordinary prudence and intelligence would exercise under like circumstances.

3. ——: EVIDENCE: EXPERT TESTIMONY. Witnesses should not have been permitted to express the opinion that the falling of the span was occasioned by a displacement of the stringers, resulting from the action of snow and ice, expert testimony not being admissible to establish such a fact.

*Appeal from Muscatine District Court.*

WEDNESDAY, DECEMBER 6.

THIS action was brought by Catharine M. Merry to recover damages on account of personal injuries sustained by her, and for loss by injuries to her horse and buggy from the falling of a bridge erected by the county of Muscatine, and constituting a part of a highway, while she was attempting to cross such bridge. There was a verdict for defendant. Pending a motion for a new trial, plaintiff died, and the administratrix of her estate was substituted as plaintiff. The motion was overruled and judgment was entered upon the verdict. The administratrix appeals.

*Richman & Carskadden* and *Thomas Hanna*, for appellant.

*D. C. Cloud* and *Ellis & Spence*, for appellee.

BECK, J.—I. There was evidence submitted to the jury tending to show that the bridge was old and insecure; that it was about 185 feet long, crossing a creek near the point at which it flowed into the Mississippi river; that repairs had

been, but a few months prior to the accident, made upon the bridge, an entire span having been replaced; that the structure rested on "bents," which were supported by neither stone work nor piles, and that but one span, an old one, fell at the time of the accident; that the fall was caused, immediately, by the "stringers" being drawn off, at one end, from the bent; that at the time of the accident the creek was somewhat swollen by the thawing of snow, the water running over the ice; that before the accident the bridge was used by the public, and that the deceased knew of the repairs having been made, and knew that a wagon and team had crossed it but a few minutes before she drove upon it. The structure exhibited appearance of weakness, and after the accident the bents, or some of them, were found not to be perpendicular. The defendant introduced evidence tending to prove that the stringers of the span which fell were drawn from their support by the action of the water and ice in raising the bents. As applicable to the evidence of this character, the court gave the following among other instructions:

"7. Much testimony has been given to you with respect to parts of the bridge other than, and at a distance from, that which fell at the time of plaintiff's accident. It is the condition of the particular part of the bridge which fell, and its immediate connections, to which you must direct your attention, and in regard to which your verdict must alone be founded. Even if you should believe that there were other parts, not immediately connected with the parts that fell, constructed of timber weakened by age, or insufficient in strength, or which were not properly fastened, yet, as the accident did not happen on such portions of the bridge, their insufficient condition cannot be considered by you as either causing or contributing to the accident of plaintiff. They can only be considered by you with the view of aiding you, should you deem such aid necessary, in ascertaining the condition of the timbers of the part that fell, or the way they were put together. If the timbers of the part that fell were sufficiently sound and strong, and had been properly connected at the time of the accident, you may dismiss from your deliberations all

consideration of other parts of the bridge except the part that fell and its immediate connections. And in no event should the condition of other parts of the bridge affect the amount of your verdict, should it be for the plaintiff."

"10. But even if you should believe that the defendant did not use the requisite care and caution in the repairing of said bridge, and that it fell because of such want of care and caution, this would not alone entitle the plaintiff to recover in this action. She must, in addition to showing negligence on the part of the defendant, show that she herself was entirely free from any negligence that helped to bring about the accident of which she complains. If there was any such negligence on the part of the plaintiff she cannot recover. If at or immediately before the accident she knew or had been notified of the unsafe condition of the bridge, or believed, or had reason to believe it unsafe, and with this knowledge or notice, or under this belief or reason for belief, undertook to pass over the bridge, this would be negligence on her part contributory to her injury, and she cannot recover. If, however, she did not know, and had no reason to believe, that the bridge was unsafe, and attempted to pass over it supposing it to be safe, and the bridge gave way, and the plaintiff was injured by such giving way, and before she could escape from the falling mass, she would not be chargeable with negligence that contributed to her injury. Under such circumstances she would be justified in trusting to the security of the bridge."

These instructions are made grounds of objection to the judgment.

II. The strength and safety of the bridge depended upon the condition of all its parts considered as one structure. To

1. BRIDGES: personal injuries: damages.

render it safe its stringers and floor were not alone required to be of sufficient strength, but those parts of the structure which gave support to them should have been sufficient; the bents, therefore, should have been of the required strength. And not only so, but they should have been sufficiently supported that they would have retained their perpendicular position. If they

had been kept by sufficient support in their proper place the stringers could not have. fallen. Now the contrivances for thus supporting the bents were other parts of the bridge. The bents, the stringers, the entire framework of the bridge, and their connection with each bank of the stream, furnished the means of supporting the bridge in a proper position. If the bridge became defective in a part remote from the span which fell, so that the necessary support was not given to keep the bents in their proper perpendicular position, such defect was the cause of the stringers or one of the spans becoming displaced and falling.

Defendant's theory of the accident is that the bents were raised by the ice and water, which displaced the stringers. If this be correct, it is equally clear that imperfections in parts of the bridge, other than those immediately connected with the fallen span, might have caused the bridge to separate, or that if it had been sufficiently strong in all its parts the falling of the stringers would not have followed the raising of the bents; or the bents would not have been raised. The seventh instruction, in our opinion, is clearly erroneous.

III. The other instruction quoted above is equally defective. It holds that plaintiff should have shown that she was

2. ——: ——: "*entirely* free from *any* negligence that helped to
contributory
negligence. bring about the accident," in order to recover; and if she had "reason to believe the bridge was unsafe," her action would be defeated. The instruction very plainly holds the plaintiff to a higher degree of care than is required by the law. The plaintiff was bound to exercise ordinary prudence and care — such care as men of ordinary judgment, intelligence and prudence would exercise under like circumstances. *Rusch v. City of Davenport*, 6 Iowa, 443; *Shanlan v. City of Keokuk*, 7 Iowa, 488; Shearman & Redfield on Negligence, § § 31, 413, 414. The negligence which would defeat the right of recovery is the absence of care of this character. But the instruction requires that she should have been "*entirely free of any negligence*," and that no reason existed to create a belief of the insecurity of the bridge. In this respect the instruction is in conflict with the rule just stated. The jury

Hughes v. The County of Muscatine.

should have been directed that plaintiff was held to the exercise of ordinary care, and that if she had reasons which would have caused a man of ordinary prudence and intelligence to believe the bridge unsafe, she was negligent in attempting to cross it.

IV. Certain witnesses were permitted, against plaintiff's objection, to express in their evidence an opinion as to the

3. ——: evidence: expert testimony. immediate cause of the falling of the bridge, that it was caused by the water and ice raising the bents, whereby the stringers were displaced. It appears to us that this is not a matter of which experts should be permitted to testify. It would follow, as a natural consequence, that if the ice was raised by the water, and the bents were so constructed that they rested upon the ice, or rather the ice could not rise without raising the bents, the bridge would be elevated by the ice. The effect of the force of the water was well understood by the jury, and could have been determined without the aid of experts. They should have had the facts as to the construction of the bridge, the character of the ice, the rise of the water, etc., presented in evidence, and then have been permitted to find the effects produced by the physical conditions found by them to have had existence. They required no opinion of experts to enable them to determine whether water and ice, under given conditions, would or would not raise the bents of the bridge. This question they could well determine upon being informed of all the facts. The evidence under consideration was erroneously admitted.

Other questions arising in the case need not be considered. The judgment of the court below, for the errors pointed out, must be

REVERSED.